**ASSICURAZIONI GENERALI, S.P.A., Plaintiff,**

v.

**Iva L. CLOVER and Gordon E. Clover, Defendants.**

**No. Civ.A. 95–57ERIE.**

United States District Court, W.D. Pennsylvania.

Sept. 18, 1998.

 

James T. Marnen, Knox, McLaughlin, Gornall & Sennett, Erie, PA, for Plaintiff.

Dennis W. Krill, Nichols, Krill & Taggart, Erie, PA, Joseph J. D'Alba, D'Alba & Associates, Erie, PA, for Defendants.

## OPINION

COHILL, Senior District Judge.

Plaintiff Assicurazioni Generali, S.p.A., ("Generali") brought this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration that Indiana law applies to this case and that the defendants are not entitled to recover underinsured motorists ("UIM") benefits under an insurance policy issued by the plaintiff. Generali also seeks rulings on questions of the stacking of insurance policies and the setoff of funds already recovered. The defendants here are Iva L. Clover and her husband, Gordon E. Clover ("the Clovers"). Before us are cross motions for summary judgment, and responsive briefs, filed by both parties. For the reasons set forth below, we will grant defendants' motion (Doc. 39) insofar as it requests a determination that the substantive law of Pennsylvania governs this action, and we will deny plaintiff's motion (Doc. 41) on that issue. Under Pennsylvania law, all disputed issues remaining in this case must be resolved by a panel of arbitrators. Accordingly, we cannot reach the remaining issues and must dismiss this declaratory judgment action.

## I. Background

The factual background to this action, though complicated, is largely undisputed. Plaintiff Generali is an Italian insurance corporation, with its principal place of business in Trieste, Italy. Generali is a surplus lines carrier and is not an admitted insurance carrier in the United States; rather, the company conducts its business in this country through its authorized agent, Alexander & Alexander ("A & A"), an Oklahoma corporation.

## The Accident

Defendants in this action are Iva L. and Gordon E. Clover. During the relevant timeframe, the Clovers resided with Mrs. Clover's son and Mr. Clover's stepson, Leroy T. Anderson, at R.D. 1, Box 58A, Bear Lake, Pennsylvania. Mr. Anderson was a self-employed trucker, who leased the equipment he owned to other trucking companies.

On July 9, 1992, in Warren County, Pennsylvania, Mrs. Clover was involved in an accident, in which the vehicle she was driving was struck from behind by another vehicle. Neither of the vehicles involved in the accident was owned by Mr. Anderson. Mrs. Clover sustained numerous serious injuries including permanent paraplegia; her medical expenses alone are approximately $1.5 million dollars. In April of 1993, the Clovers settled their claims against the tortfeasor and his employer for $620,000, which represented the bodily injury limits of liability under the driver's automobile insurance policy along with contributions from the assets of the driver and his employer.

The Clovers filed a claim under the ("UIM") Endorsement of an insurance policy for non-trucking liability ("the Policy"), which had been issued by plaintiff Generali and which covered several of Leroy Anderson's vehicles. Mr. Clover's claim is for loss of consortium and other damages. Generali's claims adjuster is Ron Coleman & Associates ("Coleman & Associates"), which is incorporated in the state of Virginia. After an investigation, the insurer filed this action, seeking, *inter alia*, a declaratory judgment that Mr. Anderson was not a "named insured" under the Policy and that therefore neither of the Clovers can recover under the UIM endorsement.

### Intrenet and ADS

Leroy Anderson came to be insured by Generali through his employer, Advanced Distribution Systems ("ADS"), a transportation company incorporated in Florida with its principal place of business in Ohio. ADS was a wholly owned subsidiary of Intrenet, Inc. ("Intrenet"), a holding company which owned

a number of transportation companies throughout the United States.[1] Intrenet was incorporated in Indiana and had its principal places of business in Indiana and New Jersey. Intrenet itself did not own or lease trucking equipment. In some instances, Intrenet's transportation companies purchased or leased trucking equipment directly from distributors; in other cases, the affiliates entered into so-called "permanent" leases with independent owner-operators through various local trucking concerns. ADS used only leased equipment, and had an arrangement, among others, with Perrin Trucking in Warren, Pennsylvania.

Perrin Trucking was Leroy Anderson's local terminal. Mr. Anderson owned a number of tractors and trailers, which he garaged at his home in Bear Lake, Pennsylvania. During the relevant timeframe, he leased several of these vehicles to ADS, and, in each case, he applied for non-trucking use insurance through his employer. Perrin Trucking was his contact with ADS. He was dispatched from either the ADS office in Ohio or from the terminal, and he turned in paperwork from his loads at the terminal. Mr. Anderson's paychecks were issued at Perrin Trucking, and he picked them up there.

### The Insurance Process at ADS

Intrenet and its affiliates purchased primary liability insurance policies for the business use of its company-owned vehicles. A different arrangement was in place to insure leased vehicles. In addition to carrying insurance for business use, the lease agreement required an owner-operator such as Mr. Anderson to purchase non-trucking or non-business use insurance for the relevant vehicles. Such insurance is also referred to as "Bobtail/Deadhead" coverage within the industry. Non-trucking insurance protected ADS, whose logo appeared on the leased vehicles, against liability for damage that might be caused when the leased vehicles were driven outside the course of business,

such as when the vehicle was being operated without a load, or when the trucker was on his way home after delivering a load. Leroy Anderson carried the required non-trucking insurance on the vehicles he leased to ADS.

Owner-operators could obtain non-trucking insurance themselves, and provide the company with a certificate of insurance as proof of coverage. ADS also made non-trucking insurance available to its owner-operators at a group rate, through the Independent Hauler's Association ("IHA"), a national trade association for independent truck drivers headquartered in Kentucky. Owner-operators could also purchase physical damage insurance through ADS and IHA.

When an owner-operator such as Mr. Anderson chose to obtain this insurance through the company, the procedure was as follows: After executing a permanent lease agreement with ADS, the trucker would fill out an Application for Group Insurance ("Application"). Leroy Anderson prepared his Application at Perrin Trucking. ADS provided IHA with a list of permanently-leased equipment that needed coverage, along with the names of the vehicle owners. IHA then obtained the necessary coverage through an insurance broker; in this case, IHA worked through A & A, in Tulsa, Oklahoma, who was plaintiff Generali's agent. A & A issued a binder on behalf of Generali with respect to non-trucking liability insurance; the binder and then the policy were delivered to Intrenet; they were not sent to the individual owner-operators. A & A also prepared Certificates of Insurance and Loss Payable Clauses, and sent copies of these documents to IHA, ADS, the owner-operator, and any lender having a lien on the leased equipment.

The policy premiums were paid by the owner-operators, who authorized ADS to deduct this as an expense from their paychecks. ADS would remit the premium payments to

---

1. Intrenet was also a holding company and owned all of the stock in Eck Miller Transportation Corp., an Indiana corporation with its principal place of business at Intrenet's headquarters in Rockport, Indiana; C.I. Whitten Transfer Co., Inc., incorporated in Delaware with its principal place of business in Huntington, West Virginia;

Mid-Western Transport, Inc., an Indiana corporation with its principal place of business in Indianapolis, Indiana; and Roadrunner Trucking, Inc., which was incorporated in New Mexico with its principal place of business in Albuquerque, New Mexico.

IHA once a month and IHA passed it on to the broker.

IHA also maintained computer records of vehicle information, which changed frequently during the effective policy period, since ADS would continue to execute new lease arrangements and would also terminate existing leases. ADS would indicate any changes in coverage for an owner-operator on a Truck Policy Change form. ADS would send the form to IHA, and, in turn, IHA would make the necessary changes in its computer data base and send the form on to the broker, A & A. IHA also prepared monthly computerized printouts adding or deleting owner-operators and vehicles to the lists submitted by each of the Intrenet affiliates when they initially applied for insurance coverage, and sent these reports to A & A. The "Non Business Liability Audit Reports" provided this updated information for non-trucking liability coverage. The parties dispute the accuracy of the information in some of these reports.

**The Policy**

We now turn to the specific policy and disputed coverage at issue. On October 18 and 19, 1991, Intrenet and each of its four transportation affiliates applied for physical damage insurance on some of their owned and leased vehicles. App. 681–689. The applications were executed in Rockport, Indiana, and delivered to an IHA representative, John Dillard, either in Rockport or in Madisonville, Kentucky, IHA's place of business.

On October 24, 1991, Eck Miller, ADS, and C.I. Whitten, the affiliates which used leased vehicles, executed an application for Insurance for Non–Trucking Use.App. at 691–92. The application was headed "Intrenet, et al". It stated that said policy would cover between 1000 and 1500 vehicles leased to Eck Miller, ADS, and C.I. Whitten, for the policy period October 18, 1991 to October 18, 1992, and that a list of drivers and a schedule of vehicles had already been sent to the insurer. App. at 691–92. The application was executed in Rockport, Indiana, and signed by

George Carter, President of Eck. It was then delivered to John Dillard of IHA in Kentucky, who sent it on to A & A in Oklahoma.

A & A issued a binder of insurance, underwritten by Generali, with respect to both the physical damage insurance and the non-trucking liability insurance. App. at 287–88; 693. Policy # AGBT–91–289 for non-trucking use was issued on January 8, 1992. App. at 694.[2] Policy AGBT–91–289 was effective from September 16, 1991 to September 16, 1992; and was later extended to provide coverage until October 16, 1992. App. at 736–38. The Policy was mailed to Intrenet, in Rockport, Indiana; Certificates of Insurance were mailed to each owner-operator.

The Policy provides for $1,000,000 combined single limit of liability coverage, and $60,000 combined single limit of uninsured motorists coverage. App. at 736.

Paragraph B of the UIM Endorsement defines the scope of coverage for UIM benefits:

B. WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

App. at 730–31.

"Family member" was defined under the UIM Endorsement as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or former child." App. at 732, ¶ F.1.

Paragraph D.4 of the UIM Endorsement provides for arbitration of disputes as follows:

ARBITRATION

---

**2.** The policy number of the physical damage policy for owner-operated vehicles, AG–91–605, was erroneously placed on the declaration page of the non-trucking policy; a corrected declaration page was issued on March 9, 1992.

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages, and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

App. at 732.

### Policy Coverage for Leroy Anderson's Vehicles

Leroy Anderson leased three vehicles to ADS. During the relevant time period, each of these was titled, garaged, and repaired in Pennsylvania. The vehicles were registered in Illinois, and, subsequently, in Oklahoma.

On November 22, 1991, Leroy Anderson and ADS executed a permanent lease agreement for a 1976 White Freightliner truck tractor (unit number 172000) and a 1981 Transcraft trailer (unit number 172000A) (collectively "the White Freightliner"). Anderson applied for physical damage and non-trucking liability coverage through IHA on March 16, 1992; these policies were renewed on October 16, 1992, and coverage ended on February 9, 1993. The Certificate of Insurance was issued on June 17, 1992, and lists the insured as Leroy Anderson and ADS.App. at 1190. It was mailed to Mr. Anderson at his home in Pennsylvania.

On April 13, 1992, Mr. Anderson permanently leased a 1984 Kenworth tractor (unit number 172008) and 1984 Utility trailer (unit number 172008A) (collectively "the Kenworth") to ADS. The ADS non-trucking policy became effective on April 13, and the vehicles remained under coverage until February 9, 1993. The Certificate of Insurance was issued on May 4, 1992, and lists the insured as Leroy Anderson and ADS.App. at 521. It was mailed to Mr. Anderson at his home in Pennsylvania.

In February of 1992, Mr. Anderson permanently leased a 1988 International tractor (unit number 172007) and 1977 Transcraft trailer (unit number 172007A) (collectively "the International") to ADS. He applied for non-trucking liability coverage through IHA from February 5, 1992. The Certificate of Insurance was issued on April 2, 1992, and lists the insured as Leroy Anderson and ADS.App. at 521. It was mailed to Mr. Anderson at his Pennsylvania home. The parties dispute whether this vehicle was covered on the date of the accident. ADS terminated the lease on the International in March of 1992, and it was repossessed by the lienholder on or about April 13, 1992. ADS executed a trucking policy change form requesting that coverage for the vehicle be canceled, and it is not listed on the IHA audit reports for the relevant period. The record, however, shows no cancellation notice.

### II. Summary Judgment Standard

Summary judgment may only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987). In considering a

motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). If upon consideration of cross motions for summary judgment we find no genuine dispute over material facts, we will order that judgment be entered in favor of the party deserving judgment in light of the law and the undisputed facts. *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 145–46 (3d Cir.1998).

### III. Discussion

The cross motions for summary judgment before us raise the following issues: whether the Clovers are "insureds" under the UIM Endorsement and thus entitled to recover UIM benefits; whether the "stacking" of any available benefits is permitted; and whether Generali is entitled to a setoff against any liability for monies the Clovers have already recovered from a third-party settlement.[3]

■ However, we must first address the threshold question of whether the substantive law of Pennsylvania or of Indiana applies to this dispute, and we turn now to that determination.

### A. Choice of Law

As a federal court sitting in diversity, we must apply the choice of law rules of the Commonwealth of Pennsylvania as the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988). However, a choice of law question only arises where there is an actual conflict between potentially applicable legal rules. *Lucker Manufacturing v. Home Insurance Co.*, 23 F.3d 808 (3d Cir.1994). Therefore, our threshold inquiry must be whether an actual

conflict between the substantive law of Indiana and Pennsylvania is presented by the specific issues before us.

The questions presented here would be decided differently under the laws of Indiana and Pennsylvania. For example, under Pennsylvania law, whether the Clovers are "insureds" is a matter to be determined in arbitration. *Brennan v. General Accident Fire and Life Assurance Corp. Ltd.*, 524 Pa. 542, 574 A.2d 580 (1990). That same issue, under Indiana law, is for the courts to decide. *Liddy v. Companion Insurance Co.*, 181 Ind. App. 16, 390 N.E.2d 1022 (1979). Similarly, the stacking of benefits for a family member of an insured is permitted in Pennsylvania under the Motor Vehicle Financial Responsibility Law ("Pa.MVFRL"), 75 Pa.C.S. § 101 et seq. *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1010–1012 (1984). Such stacking is prohibited under Indiana law. *Ansert v. Indiana Farmers Mutual Insurance Co.*, 659 N.E.2d 614, 616 (Ind.App.1995). Finally, plaintiff's argument that it is entitled to a setoff against any liability would also be analyzed differently under each state's jurisprudence. Although the states' highest courts have not spoken precisely to the issue before us, applicable cases suggest that Indiana law would permit Generali to setoff the defendants' entire $620,000 settlement, while Pennsylvania would likely allow a setoff only of the $400,-000 received from insurance coverage. *Gardner v. State Farm Mutual Ins. Co.*, 589 N.E.2d 278, 282 (Ind.App.1992); *Pempkowski v. State Farm Mutual Automobile Ins. Co.*, 451 Pa.Super. 61, 678 A.2d 398, 401 (1996), *aff'd*, 548 Pa. 23, 693 A.2d 201 (1997); *Allwein v. Donegal Mutual Ins. Co.*, 448 Pa.Super. 364, 671 A.2d 744, 747–8 (1996).

Therefore, is clear to this Court that each of the issues raised here present an actual conflict between the laws of Pennsylvania and Indiana, and that we must turn to Pennsylvania's choice of law rules to determine which law should apply.

---

**3.** The defendants' motion for summary judgment presents the additional question of whether the policy's "consent to settle exclusion" applies to bar the Clovers' recovery. The plaintiffs have conceded the issue, and we need not address it here. Pl.'s Br. in Opp. at 24.

In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the Supreme Court of Pennsylvania adopted a flexible approach to the choice of law inquiry, which combines a relationship test and contacts analysis. *Id.* at 802–03. When applying *Griffith*, the Court " 'takes into account both the grouping of contacts [listed in Restatement (Second) of Conflict of Laws § 188(2) (1971) ] with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction.' " *Compagnie des Bauxites v. Argonaut–Midwest Insurance*, 880 F.2d 685, 689 (3d Cir. 1989) (quoting *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978)).

Put another way, "the jurisdiction having more interest in the problem and which is more intimately concerned with the outcome, is the forum whose law should apply." *Allstate v. McFadden*, 407 Pa.Super. 537, 595 A.2d 1277 (1991), citing *Spratley v. Aetna Casualty & Surety Co.*, 704 F.Supp. 595 (E.D.Pa.1989).

Although *Griffith* involved an underlying tort action, its analysis has been extended to contract cases. *In re Hunter*, 421 Pa. 287, 218 A.2d 764 (1966); *Compagnie des Bauxites*, 880 F.2d at 688 n. 9 (3d Cir.1989).

In the absence of an effective choice of law by the parties themselves, § 188 of the Restatement (Second) of Conflict of Laws provides that the court shall consider the following contacts:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188(2) (1971).

## 1. Contacts

■ A federal court faced with a conflicts of law determination must first characterize the precise issue before it. *Home Insurance Co. v. McGovern*, 837 F.Supp. 661, 664 (E.D.Pa.1993). The questions presented here are whether the Clovers are covered by the UIM endorsement of the Policy, and, if so, whether the applicable law permits stacking of coverage and requires a setoff for monies collected from the tortfeasor and his insurer.

Both Pennsylvania and Indiana have significant contacts with the Policy on these issues. The Policy was negotiated in and delivered in Indiana. The parent corporation, Intrenet, is an Indiana corporation with its headquarters in Indiana, and is a named insured. Intrenet's three transportation affiliates, which are also named insureds on the Policy, include Eck Miller, an Indiana corporation with its headquarters in that state, as well as ADS, Mr. Anderson's employer, and C.I. Whitten, whose headquarters and principal places of business were not located in either state. Moreover, the Policy was drafted in accordance with Indiana law, and includes the UIM Endorsement required by that state.

Pennsylvania, too, has strong contacts with the insurance policy: Mr. Anderson, who is an insured under the Policy and the scope of whose coverage is directly at issue here, is a Pennsylvania resident. Mr. Anderson worked for ADS out of the Perrin Terminal in Warren, Pennsylvania, and he applied for his insurance there. The Policy covered vehicles that were licensed, repaired, and garaged in Pennsylvania. We note that the risk underwritten by the Policy was spread out among approximately 1500 vehicles, and that each of them, including those owned by Mr. Anderson, were frequently traveling. The risk insured by Mr. Anderson, however, when he applied for this insurance, was garaged at his home in Pennsylvania.

■ Other contacts emphasized by the defendants are not germane to the insurance contract itself and thus do not greatly affect our contacts analysis. Defendants point out that the Clovers were domiciled in Pennsylvania, that the accident in which Mrs. Clover

was injured occurred in Pennsylvania, that the third party driver and his employer are residents of that state, and that her medical treatment and health care providers are located there. However, since the question before us is one of coverage under the insurance policy and not of liability for the tort itself, the most significant contacts are those with the Policy. *Continental Insurance Co. v. Beecham, Inc.,* 836 F.Supp. 1027, 1038 (D.N.J.1993) (applying Pennsylvania choice of law analysis). In addition, under Pennsylvania law, the situs of a tort is not relevant to a dispute over an insurance contract. *Id.; McCabe v. Prudential Property and Casualty Insurance Co.,* 356 Pa.Super. 223, 514 A.2d 582, 586 (1986).

In support of their argument that Pennsylvania substantive law should be applied in this action, the defendants also emphasize that the plaintiff here is an Italian insurance company which has no contacts with either jurisdiction. However, the domicile of the parties is but one of the elements of the contacts analysis under § 188 of the Restatement, and we must evaluate these contacts "according to their relative importance with respect to the particular issue," which, in this case, is UIM coverage under the Policy. Restatement (Second) of Conflict of Laws § 188(2) (1971); *Compagnie des Bauxites,* 880 F.2d at 689 (quoting *Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 400 (3d Cir. 1987)). The insurer's domicile is of minimal importance in this dispute; it is not the plaintiff's contacts with Pennsylvania or Indiana, but the contacts between each state and the Policy which have the greater significance here.

To summarize the contacts enumerated in § 188, we find that the place of contracting and of negotiation was Indiana. The place of performance is somewhat ambiguous. It is undisputed that Mr. Anderson paid the premiums for his own insurance coverage. Pl.'s Answers to Interrogs., App. at 33. ADS deducted the premium from Mr. Anderson's compensation, and, in turn, paid the premium on the Policy to IHA. Thus the contract was either performed in Pennsylvania, where Mr. Anderson was paid, or in Ohio, at ADS' headquarters, but not in Indiana. The sub-

ject matter of the contract included 1000 – 1500 leased vehicles from several states as listed on the schedule that ADS submitted to the insurer. The particular subject matter at issue here, however, was owned by Leroy Anderson, a Pennsylvania resident, and leased to ADS, a Florida corporation headquartered in Ohio. Those vehicles were licensed, garaged, and repaired in Pennsylvania. The domicile of the parties here, while given very little weight, tilts toward Pennsylvania, since the plaintiff is an Italian corporation and the defendants are Pennsylvania residents.

Although this appears to us to be a close question, we conclude that the state of Pennsylvania has the more significant relationship with any available UIM coverage under the insurance policy in this action.

### 2. Interests and Policies

Pennsylvania's choice of law analysis does not permit us to stop at this point, however, and we must now turn to the second prong of the *Griffith* test, and assess the interests and policies asserted by each jurisdiction. *Compagnie des Bauxites,* 880 F.2d at 691.

Pennsylvania has an interest in the ability of its residents to recover damages when injured by the negligence of underinsured motorists. This policy is reflected in the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). When, as here, a Pennsylvania resident sustains severe injuries in an automobile accident and the tortfeasor is underinsured, the state has an interest in any available UIM coverage. It also has an interest in the coverage afforded one of its residents, when that coverage insures particular vehicles licensed and garaged in Pennsylvania.

Indiana has an interest in the interpretation of insurance contracts issued in that state, and drafted to conform with that state's laws.

We find that Pennsylvania has the stronger interest in the interpretation of the UIM provision of the insurance contract which directly applies to the facts of this case, and we will apply that state's substantive law to the questions presented in these cross-motions for summary judgment.

### B. Whether the Clovers are "Insureds" under the Policy

■ It is undisputed that on July 9, 1992, the date of the accident giving rise to the Clovers' claims, Leroy Anderson was "an insured" under the non-business use policy issued by plaintiff Generali. It is also undisputed that on the date in question Mr. and Mrs. Clover resided with her son at his Pennsylvania address. In their motion for summary judgment, the Clovers first seek a determination that they are legally entitled to recover uninsured motorist damages as "insureds" under the Policy coverage afforded Leroy Anderson. The plaintiffs, by their motion, urge this Court to find that the Clovers are not insureds.

■ The UIM Endorsement, in pertinent part, provides for arbitration if "we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages ... or do not agree as to the amount of damages." UIM Endorsement, ¶ D.4, App. at 732. Under Pennsylvania law, whether the defendants are "insureds" is a question for arbitration, and the parties do not dispute this. The Pennsylvania Supreme Court analyzed a similar UIM Endorsement clause in *Brennan v. General Accident Fire and Life Assurance Corp. Ltd.*, 524 Pa. 542, 574 A.2d 580 (1990). That court stated that under the policy language, "arbitration is mandated whenever the insured and the insurer disagree as to when a party is legally entitled to recover damages." *Id.* at 583. *See also National Grange Mutual Ins. Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968).

*Brennan* has been broadly interpreted, both by the lower Pennsylvania state courts, and by federal courts applying Pennsylvania law. *See e.g. Baverso v. State Farm Ins. Co.*, 407 Pa.Super. 164, 595 A.2d 176 (1991) (holding that whether a party was "an insured" under the contract was a matter for the arbitrator to determine); *Erie Ins. Exchange v. Mason*, 406 Pa.Super. 520, 594 A.2d 741 (1991); *McAlister v. Sentry Insurance Co.*, 958 F.2d 550 (3d Cir.1992) (finding that the arbitrator must determine who was insured, and that this precluded court from deciding other issues).

■ Indeed, our reading of applicable Pennsylvania cases convinces us that all remaining issues in this action must be determined in arbitration. "[O]nce it has been determined that a substantive dispute is arbitrable, normally the arbitrator has the authority to decide all matters necessary to dispose of the claim." *Brennan*, 574 A.2d at 583, citing *Giant Markets Inc. v. Sigma Marketing Systems, Inc.*, 459 A.2d 765 (1983). Only where the parties contend that a provision of the insurance policy at issue is contrary to legislative intent as expressed in the MVFRL, or is otherwise against public policy, may the court reach other issues:

> The law is clear that, although a case turning on the application or construction of an uninsured motorist clause is within the exclusive jurisdiction of the arbitration system, when the issue is whether a particular provision of the contract is contract to a constitutional, legislative or administrative mandate, the courts properly exercise their jurisdiction over the entire matter.

*McAlister*, 958 F.2d at 554, quoting *Kester v. Erie Insurance Exchange*, 399 Pa.Super. 206, 582 A.2d 17 (1990) (citations omitted); *Mason, accord*, 594 A.2d at 742.

The parties here have raised no such claims. Therefore, having determined that the Policy provides for the arbitration of the question whether the Clovers are covered by the UIM Endorsement, it appears to us that the remainder of the disputed issues presented by the cross motions for summary judgment must be directed to the panel of arbitrators as well. The parties' disagreement over whether Mr. Anderson had two or three vehicles insured under the Policy on the date of the accident, and the dispute over the amount of setoff permitted under Pennsylvania law, may not be decided by this Court, but are matters to be taken up in arbitration. We can proceed no further and must dismiss the remainder of this action.

### IV. Conclusion

We find that Pennsylvania law applies to the claims presented herein, and will grant summary judgment in favor of the defendants and against the plaintiff on that issue.

Under Pennsylvania law the remaining issues raised on summary judgment must be decided by a panel of arbitrators. Accordingly, the remainder of this declaratory judgment action will be dismissed.

An appropriate Order follows.

## ORDER

AND NOW, to-wit, this 18th day of September, 1998, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendants' motion for summary judgment (Doc. 39) be and hereby is GRANTED as to the issue of choice of law: the substantive law of Pennsylvania shall govern this action.

2. Plaintiff's motion for summary judgment (Doc. 41) be and hereby is DENIED as to the issue of choice of law.

3. Since, under Pennsylvania law, all remaining issues presented by these cross motions for summary judgment must be resolved by a panel of arbitrators, we are without jurisdiction to address these claims further. Accordingly, the Clerk of Court be and hereby is directed to dismiss the remainder of this declaratory judgment action.