

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-21-1999

# Assicurazioni Gen v Clover

Precedential or Non-Precedential:

Docket 98-3550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Assicurazioni Gen v Clover" (1999). *1999 Decisions.* Paper 289.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/289

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 21, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3550

ASSICURAZIONI GENERALI, S.P.A.,

        Appellant

v.

IVA L. CLOVER;
GORDON E. CLOVER

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 95-00057)
District Judge: Honorable Maurice B. Cohill, Jr.

Argued September 13, 1999

BEFORE: GREENBERG, SCIRICA, and RENDELL,
Circuit Judges

(Filed: October 21, 1999)

        James T. Marnen (argued)
        Knox, McLaughlin, Gornall &
        Sennett
        120 West 10th Street
        Erie, PA 16501

         Attorneys for Appellant

        Denis W. Krill (argued)
        309 French Street
        Erie, PA 16507

         Attorney for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. FACTS AND PROCEEDINGS

A. The Accident

This matter comes before this court on appeal from an order entered September 18, 1998, in this insurance coverage declaratory judgment action. The case arises from a motor vehicle accident in Warren County, Pennsylvania, on July 9, 1992, in which Iva L. Clover was seriously and permanently injured. As a result of the accident, Clover is now paraplegic and already has incurred more than $1.5 million in medical bills. In April 1993, Clover and her husband settled their bodily injury and loss of consortium claims with the driver of the other vehicle for $620,000, an amount equal to the full amount of the driver's automobile liability insurance coverage, as well as an out of pocket payment from the driver's employer.

Following this settlement, the Clovers filed a claim for underinsured motorist ("UIM") benefits provided in a non-trucking liability policy issued by appellant Assicurazioni Generali, S.P.A. The policy covered three tractor trailer units Iva Clover's son Leroy Anderson owned and operated but leased to Advanced Distribution System, Inc. ("ADS"), a subsidiary of Intrenet, Inc., an Indiana corporation. The policy, of course, did not cover the vehicle Clover occupied at the time of the accident. At that time the Clovers were living with Anderson in Bear Lake, Pennsylvania.

B. The Policy

The circumstances leading to the issuance of the policy were as follows. ADS and other Intrenet affiliates lease trucking equipment from owner-operators like Anderson. In November 1991, Anderson executed a so-called permanent lease for certain tractors with ADS through its agent, Perrin Trucking, located in Warren, Pennsylvania. As an incentive to owner-operators like Anderson to lease their vehicles,

2

Intrenet and its affiliates offered them physical damage insurance for their leased equipment at group rates lower than those that they could have obtained on their own. Similarly, Intrenet and ADS also made non-trucking liability insurance available to the owner-operators at group rates. This insurance protected the lessee corporations against liability for damage caused by the owner-operators and their drivers while they were not performing duties for the corporations. Thus "non-trucking" refers to the use of the vehicle rather than the type of vehicle covered. The lessee corporations needed protection against such liability because their names appeared on the equipment itself.

As part of his business relationship with ADS, Anderson obtained both physical damage and non-trucking liability group insurance through Intrenet. Generali issued the policies, which were in effect at the time of Clover's accident, to Intrenet, Inc. and its affiliates. The policies covered approximately 1500 permanently-leased pieces of equipment, including the three units leased by Anderson. In order to supply the drivers of the equipment with proof of insurance, Generali, through its agents, provided certificates of insurance to the owner-operators. The certificates issued to Anderson for his vehicles listed "Leroy Anderson and Advanced Distribution Systems" under the word "Insured."

The non-trucking liability policy at issue included various endorsements called "Indiana Changes" and included an endorsement in large capitalized type titled "INDIANA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE." The endorsement allowed an "insured" to recover compensatory damages for "bodily injury" and "property damage" caused by the driver of an uninsured or underinsured motor vehicle. The endorsement defined the term insured as follows:

> Who Is an Insured
>
> 1. You
>
> 2. If you are an individual, any `family member.'
>
> 3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' . . .

3

        4. Anyone for damages he or she is entitled to rec over because of `bodily injury' sustained by another `insured.'

The endorsement defined "family member" as"a person related to you by blood, marriage or adoption who is a resident of your household . . . ." The second page of the non-trucking liability policy itself, rather than the UIM endorsement, further provided: "Throughout this policy the words `your' [sic]1 and`your' [sic] refer to the Named insured shown in the Declarations. The words `we' `us' and `our' refer to the Company providing this insurance." The declaration page, in turn, listed the "Insured's Name/Address" as "Intrenet, Inc., et al. P.O. Box 248, Rockport, Indiana 47635." Additionally, Generali issued an endorsement, which became a part of the policy, that provided a named insured schedule. This schedule listed Intrenet, ADS, and other Intrenet affiliates as named insureds, but did not list Anderson or the other owner-operators.

Finally, as significant here, the UIM endorsement contained an arbitration clause that stated in relevant part:

        a. If we and an `insured' disagree whether the`insured' is legally entitled to recover damages from the owner or driver of an `uninsured motor vehicle' or `underinsured motor vehicle' or do not agree as to the amount of damages, either party may make a written demand for arbitration. . . .

        b. . . . A decision agreed to by two of the arbitr ators will be binding as to:

        1. Whether the `insured' is legally entitled to  recover damages, and

        2. The amount of damages. . . .

App. at 732.

_____

1. As Generali points out, Br. at 13 n.2, the first word clearly was meant to be "you" instead of "your."

4

## C. The Litigation

After the Clovers notified Generali through its agents[2] that they would be claiming bodily injury and loss of consortium benefits under the UIM endorsement, Generali brought this declaratory judgment action under 28 U.S.C. SS 2201 and 2202, seeking a ruling that Clover is not an "insured" according to the policy's terms. See Assicurazioni Generali, S.P.A. v. Clover, 18 F. Supp.2d 550, 551 (W.D. Pa. 1998). Generali also sought rulings on questions regarding the stacking of insurance policies and set off of funds already recovered. See id. The parties thenfiled cross-motions for summary judgment, with Generali arguing that the court should resolve the substantive issues in the case by applying Indiana law, and the Clovers claiming that Pennsylvania law governed and that therefore all substantive issues would have to be resolved through arbitration. See id.

After determining that there was a conflict between Pennsylvania and Indiana law with respect to the issues posed, the district court applied Pennsylvania's choice of law rules as established in Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964). According to the district court, Griffith required it to determine the applicable law by performing both the contacts analysis provided in the Restatement (Second) Conflict of Laws S 188(2) (1971) and an interests and policies analysis. See 18 F. Supp.2d at 556-58. The court concluded that under both of these tests Pennsylvania law should be applied. Accordingly, inasmuch as under Pennsylvania law the arbitration clause in the policy would be interpreted to require arbitration of all issues, the court dismissed the action in order to allow the parties to proceed to arbitration. Thus, the district court did not reach the merits of the controversy. See id. at 558. Generali appeals.

_____

2. Generali is a surplus lines carrier and is not an admitted insurance carrier in the United States; the company conducts its business in this country through its authorized agent, Alexander & Alexander, an Oklahoma corporation. Generali's claims adjuster is Ron Coleman & Associates, which is incorporated in the state of Virginia.

II. DISCUSSION

A. Jurisdiction and Standard of Review

The district court had jurisdiction in this diversity of citizenship action under 28 U.S.C. SS 1332, 2201, and 2202, and we have jurisdiction under 28 U.S.C. S 1291. Because Generali appeals from the district court's grant of a motion for summary judgment, our review is plenary. See Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998).

B. The Parties' Choice of Law

The district court in this diversity action was obligated to apply the forum's, namely Pennsylvania's choice of law rules in resolving the parties' dispute over which law applied to the policy. See Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). Both Pennsylvania law and the Restatement of Conflict of Laws provide that the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law. See Smith v. Commonwealth Nat'l Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989); see also Restatement (Second) Conflict of LawsS 187 (1971). Nevertheless the district court simply assumed without an articulated analysis that the parties had not indicated any intention regarding the law that would apply in interpreting the policy. See 18 F. Supp.2d at 556 ("In the absence of an effective choice of law by the parties themselves,S 188 of the Restatement . . . provides [as follows].").

It is true that the non-trucking liability policy and the UIM endorsement do not contain an explicit choice of law clause. However, as the district court recognized, the policy was "drafted in accordance with Indiana law, and includes the UIM Endorsement required by that state." Id. Indeed, as we have indicated, the endorsement is titled, in large capital letters, "INDIANA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE." Thus, it is the Indiana UIM endorsement itself not merely the policy, which contains the arbitration clause whose scope is at issue. Further, Generali issued Indiana changes as endorsements to the policy.

The Restatement makes clear that a contract's references to the laws of a particular state may provide persuasive evidence that the parties to the contract intended for that state's law to apply. See Restatement S 187 cmt. a. The repeated references to Indiana law in the endorsement, and Generali's unmistakable intent that the UIM coverage as set forth in the endorsement not only comply with, but clearly track Indiana law, demonstrate that the parties at least implicitly and perhaps even explicitly chose Indiana law to govern the policy's terms. Consequently, the district court should have considered the content of the endorsement itself, rather than an interest analysis as determinative. Accordingly, it should have applied Indiana law, as the endorsement to the insurance policy contemplated, to determine the scope of the arbitration provision that was incorporated within its terms.

The Clovers attempt to avoid the result that Indiana law applies on a choice of law selection basis with an argument that an "Out of State Coverage Extensions" section in the policy requires the application of Pennsylvania law to the entire dispute. But this section merely provides that when a "covered auto," such as one of Anderson's tractor trailers, is away from the state where it is licensed, Generali will honor the liability limits and types of coverage required by the jurisdiction of use. This section in no way is germane here as Clover was indisputably not in a "covered auto" at the time of her accident. Furthermore, this section does not suggest that the foreign jurisdiction's law will control interpretation of the policy's terms. Instead, it merely states that the level of coverage required by the jurisdiction in which the covered auto is operated will be honored. The inclusion of this provision in the policy simply does not affect the conclusion that Indiana law was chosen to govern interpretation of the policy's terms.

We recognize that courts sometimes do not enforce choice of law clauses in adhesion contracts due to the differential in bargaining power between the parties. This reasoning, however, does not apply to group insurance contracts, at least in the circumstances here. See Eugene F. Scoles and Peter Hay, Conflict of Laws S18.5 at 666-67 (2d ed. 1992). When, as in this case, a business entity such as Intrenet

7

obtains a group insurance contract that applies to individuals in various states, both the insurer and the organization have an arguable interest in establishing uniform procedures by specifying a particular state's law to apply to future disputes. See id. at 667. Further, a choice of law made by the insurer is less suspect in the group insurance context as the greater bargaining leverage possessed by the group agent should protect the insureds from unfavorable law. See id. Thus, there is no barrier to applying Indiana law to determine the scope of the arbitration clause in the policy.

C. The Consequence of the Choice of Indiana Law

The application of Indiana law will result in the unremarkable consequence that the district court on remand will resolve the legal issues in dispute. As Generali argues, the arbitration clause in Anderson's UIM policy would not be interpreted in Indiana as requiring arbitration of the scope of insurance coverage. See Liddy v. Companion Ins. Co., 390 N.E.2d 1022, 1028 (Ind. Ct. App. 1979). In Liddy, the Indiana Court of Appeals considered the meaning of an arbitration clause that was nearly identical to the clause at issue in this case as it provided:

> Arbitration: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile . . . or do not agree as to the amount of payment which may be owing under this Coverage, then . . . the matter or matters upon which such person and the company do not agree shall be settled by arbitration . . . .

Id. at 1024. The court concluded that such language allowed for arbitration on two issues only: "(1) whether or not the insured or his personal representative is legally entitled to recover damages from the owner or operator of an uninsured automobile, and (2) if so, the amount of damages which the insured or his personal representative is legally entitled to recover from the owner or operator of the uninsured automobile." Id. at 1028. Thus, the Indiana Court of Appeals clearly has rejected the suggestion that an arbitration clause such as the one at issue in this case

requires arbitration of a coverage, stacking, and set off dispute. While we are not bound by a decision of an intermediate state court of appeals as to state law, such an opinion is entitled to serious consideration, see Robinson v. Jiffy Executive Limousine Co., 4 F.3d 237, 242 (3d Cir. 1993), and the Clovers acknowledge that Liddy correctly states Indiana law. Br. at 25.

We recognize that sometimes there are public policy issues implicated in insurance disputes but we have no reason to believe that Pennsylvania would decline to give effect to a UIM provision that requires that a court rather than arbitrators decide the issues implicated in this case. Surely Indiana's preference for judicial resolution of the issues cannot be thought to be against "public health, safety, morals or welfare." See Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998). Moreover, while arbitration clauses have been applied broadly, still in recent times there has been a certain retreat from that approach in favor of the use of judicial remedies. See , e.g., Wright v. Universal Maritime Serv. Corp., 119 S.Ct. 391, 396 (1998).

Furthermore, we have not overlooked the Clovers' argument that the Pennsylvania Uninsured Motorist Coverage Act, Pa. Stat. Ann. tit. 40, SS 2000 et seq. (West 1992), and the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. Ann. ___ 1701 et seq. (West 1996), should be liberally construed in favor of finding coverage. See e.g., Jeffrey v. Erie Ins. Exch., 621 A.2d 635, 641 & n.5 (Pa. Super. Ct. 1993). Rather, we do not find that that principle is implicated here as we are not addressing the scope of coverage under those statutes but are determining only a choice of law question without regard for its ultimate effect on the outcome of the dispute. In any event, the Pennsylvania approach in favor of coverage cannot overcome the straightforward wording of the insurance policy and UIM endorsement provisions which control our result.

Ultimately the crucial question in this case will be whether Clover is covered by the UIM endorsement as her son's family member. At least at this time the parties are not disputing the legal liability of the tortfeasor who caused Clover's injuries. Therefore, according to Indiana law, the

9

key disputes in this case are not arbitrable under the UIM arbitration clause and a court must resolve the coverage issue and, if necessary, the stacking and set off disputes. Consequently, we are constrained to reverse.

III. CONCLUSION

For the foregoing reasons we will reverse the order of the district court of September 18, 1998, and will remand the case to the district court for it to decide the coverage issues now in dispute.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

10